IN THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LATASHA TRAMMELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) 3:15-CV-80 |
| 11303 RESTAURANT CORP, d/b/a | ) |
| POPEYES LOUISIANA KITCHEN, | ) **JURY TRIAL DEMANDED** |
| KADIRALI CHUNARA, individually, | ) |
| AZAD PANJWANI, individually, | ) |
| SALIM SAYANI, individually, NINA | ) |
| SAYANI, individually, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### I. INTRODUCTION

1. This is an action for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race, and retaliation against the Plaintiff. The suit is brought to seek a declaratory judgment that Defendants have engaged in a systemic pattern and practice of racial discrimination in employment opportunities and to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter "Title VII"); and 42 U.S.C. § 1981 (hereinafter "§ 1981"), which provide for relief against discrimination and harassment in employment on the basis of race and retaliation thereto.  Specifically, Plaintiff alleges that Defendants subjected her to a hostile work environment based on her race, black; discriminated against her based on her race, black, in the terms and benefits of her employment including pay, promotion and discipline; and unlawfully retaliated against her once she opposed the racial harassment and discrimination.  Plaintiff seeks a permanent injunction and other equitable relief necessary to eliminate the effects of Defendants' past and present racial

discrimination and to prevent such discrimination from continuing to adversely affect her life, career, including, but not limited to, affirmative restructuring of the promotion selection procedures, training, pay, and other terms and conditions of employment. Plaintiff seeks damages, back pay, front pay, and other equitable remedies necessary to make herself whole. Plaintiff seeks compensatory and punitive damages, and requests a trial by jury of all issues triable by a jury pursuant to 42 U.S.C. § 1981a. Further, Plaintiff seeks attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## II. JURISDICTION AND VENUE

2.     The unlawful employment practices alleged hereinbelow were committed by Defendants within Chambers County, Alabama. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5.

3.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4), and 42 U.S.C. § 2000e-5; and 42 U.S.C. §§ 12112, 12117(a) and 12203, which incorporates by reference Sections 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(l) and (3), Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a and the "Civil Rights Act of 1866," as amended by § 101 of the "Civil Rights Act of 1991," and codified at 42 U.S.C. § 1981.

## III. ADMINISTRATIVE PREREQUISITES

4.     Plaintiff pursues her claims against Defendant Popeyes under both Title VII and 42 U.S.C. § 1981, and the individually named Defendants under 42 U.S.C. § 1981, and has met all administrative conditions precedent for filing this case under Title VII. Plaintiff timely filed a charge of discrimination within one hundred-eighty (180) days of the alleged discriminatory conduct and has obtained a Right-To-Sue Notice. Plaintiff has timely brought this action following

the issuance of her Right-To-Sue Notice by filing suit within ninety (90) days of receipt of the Right-To-Sue Notice.

## IV. PARTIES

5.      Plaintiff, Latasha Trammell, is a black female citizen of the United States over the age of nineteen (19) years and is a resident of the State of Alabama.

6.      Defendant, 11303 Restaurant Corp. d/b/a Popeyes Louisiana Kitchen ("Popeyes"), is an employer doing business in Chambers County, Alabama, and at all times relevant to this action, Popeyes was the former employer and/or is the employer of Plaintiff within the meaning of 42 U.S.C. § 1981 and of 42 U.S.C. § 2000e(a) and (b).  At all times relevant to this action, Plaintiff was the employee of Popeyes.  At all times relevant to this action, Popeyes has employed at least fifteen (15) or more employees.

7.      Defendant, Kadirali Chunara ("Ali"), is a Middle Eastern male citizen of the United States over the age of nineteen (19) years and is a resident of the State of Georgia.

8.      Defendant, Azad Panjwani ("Andy"), is a Middle Eastern male citizen of the United States over the age of nineteen (19) years and is a resident of the State of Georgia.

9.      Defendant, Salim Sayani ("Salim"), is a Middle Eastern male citizen of the United States over the age of nineteen (19) years and is a resident of the State of Alabama.

10.     Defendant, Nina Sayani ("Nina"), is a Middle Eastern female citizen of the United States over the age of nineteen (19) years and is a resident of the State of Alabama.

## V. STATEMENT OF FACTS AND CLAIMS
## GENERAL ALLEGATIONS

11.     Plaintiff is a former employee of Popeyes.  Popeyes is a fast food restaurant located in Valley, Alabama.

12.     Defendants Ali, Andy, Salim, and Nina are the owners of Popeyes and oversee the

operations of the Valley, Alabama store.

13.     During Plaintiff's employment with Popeyes, she witnessed and/or suffered discrimination based on her race, black.

14.     Plaintiff was the only black shift manager at the Valley store and has been treated less favorably than white employees in the terms and conditions of her employment and employment rules and policies are applied differently to Plaintiff than her white counterparts.

15.     During the course of her employment, Plaintiff was denied proper training and has been given unwarranted counseling based on her race, black.

16.     Plaintiff was paid less than similarly situated white employees for performing the same or similar work.

17.     Plaintiff complained about the racially discriminatory and hostile conduct, but no remedial actions were taken by Popeyes, Ali, Andy, Salim, or Nina to stop and/or prevent such conduct.

18.     Plaintiff has been subjected to a racially discriminatory and hostile comments and conduct from Defendants.

19.     The racially discriminatory and hostile conduct is ongoing and of a continuing nature, and it creates a racially hostile work environment in which blacks, including Plaintiff, are forced to work.

20.     Plaintiff has been subject to racial epithets, statements, and comments being made by Salim and Nina to her and to other black employees. The comments include, but are not limited to, the following: "you people", "niggers"; Plaintiff was instructed to "fire all of the black cooks because you people are lazy"; Salim stated to Plaintiff that he was surprised that she had a degree and when Plaintiff asked why he stated that he didn't think she would; Plaintiff was instructed to

interview another black applicant outside of the restaurant because Jamil, a Middle Eastern manager, stated that the black applicant was "one of her kind" and "brown"; Andy stated to Plaintiff that he "doesn't want too many black employees because the store wouldn't get enough customers in if it wasn't ran by white employees."

21.     On several occasions, Plaintiff reported for her morning shift and when the cashier's drawers would come up short from the previous night shift with a different, white shift manager. Plaintiff was held responsible for the amount of shortage despite the fact that she did not work the previous shift. Her white counterpart that did work the previous shift as the shift manager, Ricki Bailey, was not held responsible for the shortage. On one occasion when she was accused of the shortage in the cashier's drawer, Salim called Nina and during the conversation and Plaintiff, who was standing right next to Salim during the phone conversation, heard Nina state, "that nigger did it!" when discussing who was responsible for the missing money in the cashier's drawer.

22.     On another occasion, Salim and Nina instructed the white manager to write up Plaintiff because other employees had thrown away three (3) cases of spoiled, rotten chicken. None of her white counterparts were written up; she was the only black shift manager and the only one written up for the incident.

23.     Ali, Andy, Salim, and Nina often spoke in their own language to say additional negative comments; this was evident based on their body language toward Plaintiff and other black employees when they spoke in their own language in her presence.

24.     These racially derogatory comments and actions are severe and pervasive and changed the conditions of Plaintiff's employment.

25.     Plaintiff complained about the racially hostile conduct to Salim when he made the

comments, as well as to other managers, but no action was taken by Defendants to stop and/or prevent this improper conduct from reoccurring and it continued.

26.     After Plaintiff complained to Salim about his comments and actions and the hostile work environment, Plaintiff was retaliated against in the terms and conditions of her employment and was fired because the owners allege that she threw away chicken; however, the reason given is pretext for unlawful retaliation under Title VII.

**COUNT I**
**TITLE VII VIOLATIONS – DEFENDANT POPEYES**
**RACIAL HARASSMENT, DISCRIMINATION & RETALIATION**

27.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-26 above with the same force and effect as if fully set out in specific detail hereinbelow.

28.     Plaintiff has not only been subjected to individualized acts, incidents, and/or episodes of the hostile work environment and discriminatory animus condoned and created by Popeyes, but has similarly been subjected to the hostile work environment and discriminatory animus condoned and created by Popeyes through the "totality of the circumstances" of the acts, incidents, and/or episodes experienced by other black employees.  These acts, incidents, and/or episodes are described in detail above and below.  A hostile work environment "can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  Plaintiff also relies on these acts, incidents, and/or episodes she witnessed toward other black employees.

29.     Plaintiff was hired to work for Popeyes on or about July 15, 2014 as a cashier and shortly thereafter, was promoted to the title of shift manager and was told she would receive an increase in pay to $7.50 an hour, which she never received.

30.     During her employment, Plaintiff was subjected to a racially hostile work

environment, as delineated above and below.  She was aware of and witnessed racial comments made to her black co-workers including routine comments of "you people", "niggers", "you brown people", "your kind".   These comments were routinely made to Plaintiff and other black employees.

31.    On one occasion, Salim instructed her to "fire all the black cooks because you people are lazy."  On another occasion, Andy stated that he "doesn't want too many black employees because the store wouldn't get enough customers in if it wasn't ran by white employees."

32.    Plaintiff was instructed to interview another black applicant outside of the restaurant because Jamil, a Middle Eastern manager, stated that the black applicant was "one of her kind" and "brown" and he did not want her interviewed inside the restaurant.

33.    In one instance, Salim stated to Plaintiff that he was surprised that she had a degree and when Plaintiff asked why he stated that he didn't think she would.

34.    On several occasions, Plaintiff would report for her regular 8:00 a.m. shift and the cashier's drawer had a shortage from the previous night's shift, a shift in which Plaintiff did not work and a white employee, Ricki Bailey, was the shift manager.  Each time this occurred, Salim attempted to hold Plaintiff responsible for the missing money.  In one instance, when Plaintiff refused to be held responsible for a shortage from the white shift manager's shift, Salim called Nina and Plaintiff heard Nina state, "that nigger did it!" accusing Plaintiff of stealing during a shift in which she was not present.

35. On another occasion, Salim and Nina instructed the white manager to write up Plaintiff because other employees had thrown away three (3) cases of spoiled, rotten chicken.  None of her

white counterparts were written up; she was the only black manager and the only one written up for the incident.

36.     Each time Plaintiff complained about the racially hostile work environment and voiced her disdain to Salim, but nothing was done. Plaintiff complained to Salim each time she received her paycheck when it did not reflect the pay increase from her promotion. Salim stated that it was there even though the pay was listed as $7.25 per hour. He stated that it was still reflected, despite Plaintiff's response that the math did not add up. After numerous complaints, nothing was done to stop the improper conduct.

37.     After initially complaining about the racially discriminatory conduct and environment, Plaintiff was retaliated against in the terms and conditions of her employment. She was eventually fired for the actions of other employees in throwing away three (3) cases of spoiled, rotten chicken; a reason that is clearly pretext for unlawful retaliation under Title VII.

38.     Plaintiff was treated differently in the terms and conditions of her employment and was subjected to a hostile work environment because of her race, black.

39.     Popeyes intentionally and maliciously discriminated against Plaintiff in the terms, conditions, and benefits of her employment.

40.     Plaintiff has been discriminated against by Popeyes in the terms, conditions, and privileges of her employment through the creation and toleration of a racially charged and hostile work environment.

41.     Plaintiff has been subject to a racially hostile work environment which has been authorized, ratified, encouraged, and condoned by Popeyes.

42.     This racially hostile environment includes, but is not limited to, racial slurs, racial jokes, racial harassment, racial stereotypes, and other disparate treatment by which black persons

are treated as inferior, as set out in detail above and below.

43.     The racially hostile environment changed the terms and conditions of the employment of Plaintiff.

44.     Supervisors and/or management officials at Popeyes participated in, were aware of, encouraged, and/or condoned the racially hostile work environment.

45.     Popeyes failed to train its employees, including Plaintiff, on its purported anti-discrimination policy and reporting procedures.

46.     Popeyes, through its agents and employees, has a racial animus against blacks, including Plaintiff.

47.     Plaintiff has been directly affected by the discriminatory practices described in this Complaint.

48.     The systemic discrimination, as previously set forth, further adversely affected Plaintiff as an employee by promoting and reinforcing racial stereotypes and racial bias in the workplace.

49.     Plaintiff made good faith complaints in opposition to the racial discrimination and racial harassment to which she, and other black employees were subjected.

50.     As set out in detail above, in retaliation for Plaintiff's good faith opposition to racial harassment and racial discrimination, Popeyes has retaliated against Plaintiff and other black employees who have protested and/or complained about the racially discriminatory treatment by taking adverse employment actions against her.

51.     Popeyes's conduct was retaliation based, at least in part, on Plaintiff's protected activities of opposing racial discrimination and harassment.

52.     The unlawful actions of Popeyes, as set forth above, constitute a practice, pattern,

custom or policy of Popeyes for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of the employees' federally protected rights.

53.     The conduct of Popeyes was so severe or pervasive as to create a racially hostile working environment for Plaintiff.

54.     Popeyes knew, or should have known, of the racial discrimination, racial harassment, and retaliation of Plaintiff.

55.     Popeyes failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial harassment, racial discrimination, and/or retaliation of Plaintiff.

56.     The actions of Popeyes, as set out herein, violate Title VII.

57.     As a result of the actions of Popeyes, Plaintiff has been injured, suffered distress, humiliation, embarrassment, inconvenience, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

58.     Popeyes engaged in practices complained herein with malice and/or reckless indifference to Plaintiff's federally protected rights.

59.     Plaintiff suffered damages as approximate result of these violations, which were caused by Popeyes's policy or custom and/or a failure to adequately train caused by deliberate indifference to Plaintiff's rights and/or by deliberate indifference to those violations.

60.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, back pay, front pay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

## COUNT II
## 42 U.S.C. § 1981 VIOLATIONS – ALL DEFENDANTS
## RACIAL HARASSMENT, DISCRIMINATION & RETALIATION

61.       Plaintiff re-alleges and incorporated by reference Paragraphs 1-26 above with the same force and effect as if fully set out in specific detail hereinbelow.

62.       Plaintiff has not only been subjected to individualized acts, incidents, and/or episodes of the hostile work environment and discriminatory animus condoned and created by Popeyes, but has similarly been subjected to the hostile work environment and discriminatory animus condoned and created by Defendants through the "totality of the circumstances" of the acts, incidents, and/or episodes experienced by other black employees. These acts, incidents, and/or episodes are described in detail above and below. A hostile work environment "can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Plaintiff also relies on these acts, incidents, and/or episodes she witnessed toward other black employees.

63.       Plaintiff was hired to work for Popeyes on or about July 15, 2014 as a cashier and shortly thereafter, was promoted to the title of shift manager and was told she would receive an increase in pay to $7.50 an hour, which she never received.

64.       During her employment, Plaintiff was subjected to a racially hostile work environment, as delineated above and below. She was aware of and witnessed racial comments made to her black co-workers including routine comments of "you people", "niggers", "you brown people", "your kind". These comments were routinely made to Plaintiff and other black employees.

65.       On one occasion, Salim instructed her to "fire all the black cooks because you people are lazy." On another occasion, Andy stated that he "doesn't want too many black employees because the store wouldn't get enough customers in if it wasn't ran by white employees."

11

66.     Plaintiff was instructed to interview another black applicant outside of the restaurant because Jamil, a Middle Eastern manager, stated that the black applicant was "one of her kind" and "brown" and he did not want her interviewed inside the restaurant.

67.     In one instance, Salim stated to Plaintiff that he was surprised that she had a degree and when Plaintiff asked why he stated that he didn't think she would.

68.     On several occasions, Plaintiff would report for her regular 8:00 a.m. shift and the cashier's drawer had a shortage from the previous night's shift, a shift in which Plaintiff did not work and a white employee was the shift manager. Each time this occurred, Salim attempted to hold Plaintiff responsible for the missing money. In one instance, when Plaintiff refused to be held responsible for a shortage from the white shift manager's shift, Salim called Nina and Plaintiff heard Nina state, "that nigger did it!" accusing Plaintiff of stealing during a shift in which she was not present.

69.     On another occasion, Salim and Nina instructed the white manager to write up Plaintiff because other employees had thrown away three (3) cases of spoiled, rotten chicken. None of her white counterparts were written up; she was the only black shift manager and the only one written up for the incident.

70.     Each time Plaintiff complained about the racially hostile work environment and voiced her disdain to Salim, but nothing was done. Plaintiff complained to Salim each time she received her paycheck when it did not reflect the pay increase from her promotion. Salim stated that it was there even though the pay was listed as $7.25 per hour. He stated that it was still reflected, despite Plaintiff's response that the math did not add up. After numerous complaints, nothing was done to stop the improper conduct.

71.     After initially complaining about the racially discriminatory conduct and

environment, Plaintiff was retaliated against in the terms and conditions of her employment. She was eventually fired for the actions of other employees in throwing away three (3) cases of spoiled, rotten chicken; a reason that is clearly pretext for unlawful retaliation.

72.     Plaintiff was treated differently in the terms and conditions of her employment and was subjected to a hostile work environment because of her race, black.

73.     Defendants intentionally and maliciously discriminated against Plaintiff in the terms, conditions, and benefits of her employment.

74.     Plaintiff has been discriminated against by Defendants in the terms, conditions, and privileges of her employment through the creation and toleration of a racially charged and hostile work environment.

75.     Plaintiff has been subject to a racially hostile work environment which has been authorized, ratified, encouraged, and condoned by Defendants.

76.     This racially hostile environment includes, but is not limited to, racial slurs, racial jokes, racial harassment, racial stereotypes, and other disparate treatment by which black persons are treated as inferior, as set out in detail above and below.

77.     The racially hostile environment changed the terms and conditions of the employment of Plaintiff.

78.     Supervisors and/or management officials at Popeyes participated in, were aware of, encouraged, and/or condoned the racially hostile work environment.

79.     Popeyes and the individual Defendants failed to train their employees, including Plaintiff, on the purported anti-discrimination policy and reporting procedures.

80.     Popeyes, through its agents and employees, has a racial animus against blacks, including Plaintiff.

81.     Plaintiff has been directly affected by the discriminatory practices described in this Complaint.

82.     The systemic discrimination, as previously set forth, further adversely affected Plaintiff as an employee by promoting and reinforcing racial stereotypes and racial bias in the workplace.

83.     Plaintiff made good faith complaints in opposition to the racial discrimination and racial harassment to which she, and other black employees were subjected.

84.     As set out in detail above, in retaliation for Plaintiff's good faith opposition to racial harassment and racial discrimination, Defendants have retaliated against Plaintiff and other black employees who have protested and/or complained about the racially discriminatory treatment by taking adverse employment actions against her.

85.     Defendants' conduct was retaliation based, at least in part, on Plaintiff's protected activities of opposing racial discrimination and harassment.

86.     The unlawful actions of Defendants, as set forth above, constitute a practice, pattern, custom or policy of Popeyes for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of the employees' federally protected rights.

87.     The conduct of Defendants was so severe or pervasive as to create a racially hostile working environment for Plaintiff.

88.     Defendants knew, or should have known, of the racial discrimination, racial harassment, and retaliation of Plaintiff.

89.     Defendants failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial harassment, racial discrimination, and/or retaliation of Plaintiff.

90. The actions of Defendants, as set out herein, violate 42 U.S.C. § 1981.

91. As a result of the actions of Defendants, Plaintiff has been injured, suffered distress, humiliation, embarrassment, inconvenience, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

92. Defendants engaged in practices complained herein with malice and/or reckless indifference to Plaintiff's federally protected rights.

93. Plaintiff suffered damages as approximate result of these violations, which were caused by Popeyes's and the individual Defendants' policy or custom and/or a failure to adequately train caused by deliberate indifference to Plaintiff's rights and/or by deliberate indifference to those violations.

94. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, back pay, front pay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

## COUNT III
## TITLE VII VIOLATIONS – DEFENDANT POPEYES
## RACE – DISPARATE TREATMENT

95. Plaintiff re-alleges and incorporated by reference Paragraphs 1-26 above with the same force and effect as if fully set out in specific detail hereinbelow.

96. Plaintiff has been discriminated against by Popeyes because of her race, black, in the terms of wages/compensation, promotions, job assignments, discipline, discharge (lay-offs and/or termination), and other terms, conditions, and privileges of her employment.

97. Popeyes has engaged in and continues to engage in a pattern and practice of discrimination against black employees, including Plaintiff, with respect to wages/compensation,

promotions, job assignments, discipline, discharge (lay-offs and/or termination), and other terms, conditions, and privileges of their employment.

98.     The selection procedures of Popeyes have and continue to have a disparate impact on black employees, including Plaintiff.

99.     Popeyes has disciplined Plaintiff for the actions of other employees by choosing to hold her responsible for the actions of her white counterparts, because Popeyes, through its agents and employees, has a racial animus against blacks.

100.     Plaintiff has been directly affected by the discriminatory practices described in this Complaint. These include being deprived of the opportunity of working in an environment free of racial discrimination and such discrimination otherwise adversely affects her opportunity for enjoyment to work.

101.     The systemic discrimination set forth herein also further adversely affects Plaintiff's status and other blacks' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

102.     Popeyes's policy and practice of racial discrimination deprives black employees, including Plaintiff, of opportunities regarding wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment.

103.     Even in those instances in which Plaintiff had not been personally deprived of promotions, wages/compensation, job assignments, and other terms and conditions of employment, her employment status had been adversely affected by similar discriminatory treatment of other black employees as set forth in this Complaint.

104.     Plaintiff made good faith complaints in opposition to the racial discrimination to which she, and other black employees, were subjected.

16

105.    As set out in detail above, in retaliation for Plaintiff's good faith opposition to racial harassment and racial discrimination, Popeyes has retaliated against Plaintiff and other black employees who have protested and/or complained about the racially discriminatory treatment.

106.    Popeyes's conduct was retaliation based, at least in part, on Plaintiff's protected activities of opposing racial discrimination.

107.    The unlawful actions of Popeyes, as set forth above, constitute a practice, pattern, custom or policy of Popeyes for allowing acts of racial discrimination and/or retaliation in violation of its employees' federally protected rights.

108.    Popeyes knew, or should have known, of the racial discrimination and retaliation toward Plaintiff and other black employees.

109.    Popeyes failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial discrimination and/or retaliation toward Plaintiff and other black employees.

110.    The actions of Popeyes violate Title VII.

111.    As a result of the actions of Popeyes, Plaintiff has been injured, suffered distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

**COUNT IV**
**42 U.S.C. § 1981 VIOLATIONS RACE – ALL DEFENDANTS**
**RACE – DISPARATE TREATMENT**

112.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-26 above with the same force and effect as if fully set out in specific detail hereinbelow.

113.     Plaintiff has been discriminated against by Defendants because of her race, black, in the terms of wages/compensation, promotions, job assignments, discipline, discharge (lay-offs and/or termination), and other terms, conditions, and privileges of her employment.

114.     All Defendants have engaged in and continue to engage in a pattern and practice of discrimination against black employees, including Plaintiff, with respect to wages/compensation, promotions, job assignments, discipline, discharge (lay-offs and/or termination), and other terms, conditions, and privileges of their employment.

115.     The selection procedures of Defendants have and continue to have a disparate impact on black employees, including Plaintiff.

116.     Defendants have disciplined Plaintiff for the actions of other employees by choosing to hold her responsible for the actions of her white counterparts, because Popeyes, through its agents and employees, has a racial animus against blacks.

117.     Plaintiff has been directly affected by the discriminatory practices described in this Complaint. These include being deprived of the opportunity of working in an environment free of racial discrimination and such discrimination otherwise adversely affects her opportunity for enjoyment to work.

118.     The systemic discrimination set forth herein also further adversely affects Plaintiff's status and other blacks' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

119.     Defendants' policy and practice of racial discrimination deprives black employees, including Plaintiff, of opportunities regarding wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment.

120.     Even in those instances in which Plaintiff had not been personally deprived of promotions, wages/compensation, job assignments, and other terms and conditions of employment, her employment status had been adversely affected by similar discriminatory treatment of other black employees as set forth in this Complaint.

121.     Plaintiff made good faith complaints in opposition to the racial discrimination to which she, and other black employees, were subjected.

122.     As set out in detail above, in retaliation for Plaintiff's good faith opposition to racial harassment and racial discrimination, Defendants have retaliated against Plaintiff and other black employees who have protested and/or complained about the racially discriminatory treatment.

123.     Defendants' conduct was retaliation based, at least in part, on Plaintiff's protected activities of opposing racial discrimination.

124.     The unlawful actions of Defendants, as set forth above, constitute a practice, pattern, custom or policy of Defendants for allowing acts of racial discrimination and/or retaliation in violation of its employees' federally protected rights.

125.     Defendants knew, or should have known, of the racial discrimination and retaliation toward Plaintiff and other black employees.

126.     Defendants failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial discrimination and/or retaliation toward Plaintiff and other black employees.

127.     The actions of Defendants violate 42 U.S.C § 1981.

128.     As a result of the actions of Defendants, Plaintiff has been injured, suffered distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

**COUNT V**
**TITLE VII – DEFENDANT POPEYES**
**RACE – DISPARATE IMPACT**

129.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-26 with the same

force and effects as if fully set out in specific detail hereinbelow.

130.     Plaintiff has been subject to systemic racial discrimination including, but not

limited to, a pattern and practice of intentional discrimination and a battery of practices having an

unlawful disparate impact on her employment.  Such racial discrimination includes a policy and

practice of restricting blacks' employment opportunities to lower compensation levels.   The

systemic means of accomplishing such racial discrimination include, but are not limited to,

Popeyes's promotion selection, compensation, discipline, and reporting procedures, racially

hostile reputation and conditions of work, and unequal terms and conditions of employment.

131.     Popeyes's selection, compensation, discipline, and reporting procedures

incorporate the following racially discriminatory practices: 1) reliance upon subjective procedures

and criteria which permit and encourage the incorporation of racial stereotypes and bias; 2) refusal

to establish or follow policies, procedures, or criteria that reduce or eliminate disparate impact

and/or intentional racial bias or stereotypes in Popeyes's decision-making process; 3) refusal to

maintain employee files including, but not limited to, a refusal to: follow a write up procedure,

provide employees with an employee handbook, retaining employee write ups signed by the

employee; all of which result in a disparate impact through a reputation for racial bias, racially

hostile conditions of work, and unequal terms and conditions of employment in such areas as

compensation, work hours, and position assignments.

132.     Popeyes's compensation, selection, discipline, and reporting procedures are

intended to have a disparate impact on blacks, including Plaintiff.  Such procedures are not valid,

20

job related, or justified by business necessity. There are objective and structured selection, discipline, and reporting procedures available to Popeyes which have less disparate impact on blacks and equal or greater validity and job relatedness, but Popeyes has refused to consider or use such procedures.

133.     Popeyes's compensation, selection, discipline, and reporting procedures are intended to have a disparate impact on blacks, including Plaintiff.

134.     Popeyes's compensation, selection, discipline, and reporting procedures have adversely affected Plaintiff including, but not limited to, the following: assigning blacks inferior job duties, pay rates, and/or other unequal terms and conditions of employment; and encouraging or ratifying racially hostile conditions of work and racially demeaning stereotypes regarding the capabilities, motivation, and interests of blacks.

135.     Popeyes has also continuously engaged in, condoned, and ratified discrimination which constitutes a continuing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., as amended, and 42 U.S.C. § 1981, as amended.

136.     Plaintiff has no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this suit for back pay, front pay, an injunction, other equitable relief, and a declaratory judgment is her only means of securing adequate equitable relief. Plaintiff has suffered irreparable injury from Popeyes's unlawful policies and practices as set forth herein unless enjoined by this Court.

137.     By reason of Popeyes's discriminatory employment practices, Plaintiff has experienced harm, including loss of compensation, back and front pay, and other employment benefits.

## VI.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the following relief:

1.   A declaratory judgment that Popeyes's employment practices challenged herein are illegal and in violation of Title VII;

2.   A declaratory judgment that Defendants' employment practices challenged herein are illegal and in violation of 42 U.S.C § 1981;

3.   A temporary and permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by such Defendants set forth herein;

4.   An Order requiring directing Defendants to adjust the wage rates and benefits for Plaintiff that she would have enjoyed but for Defendants' discriminatory practices;

5.   An award of back pay, front pay, lost job benefits, nominal, compensatory, and punitive damages for all legal relief sought in this Complaint;

6.   An award of litigation costs and expenses, including reasonable attorneys' fees to Plaintiff;

7.   Prejudgment interest; and

8.   Any other equitable relief as the Court may deem just and proper.

Respectfully submitted this 29th day of January, 2015.

Barbara Agricola McCormick (AGR004)
Zachary D. Alsobrook (ALS006)
*Attorneys for Plaintiff*

**OF COUNSEL**:
Alsobrook & McCormick, LLC
126 South 8th Street
Opelika, Alabama 36801
Phone: 334.737.3718
Fax: 334.737.3716

barbara@alsolaw.com
zach@alsolaw.com
www.alsobrookmccormick.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY**

OF COUNSEL

Plaintiff requests this Honorable Court serve via certified mail upon Defendants the following:
Summons, Complaint

**DEFENDANTS' ADDRESSES:**

C/O Azad "Andy" Panjwani, Registered Agent
11303 Restaurant Corp. d/b/a Popeyes
3550 20th Avenue
Valley, Alabama 36854

Kadirali "Ali" Chunara
2199 Glenmore Lane
Snellville, Georgia 30078

Azad "Andy" Panjwani
2167 Huntcrest Way
Lawrenceville, Georgia 30043

Salim Sayani
1315 Sydney Street
Valley, Alabama 36854

Nina Sayani
1315 Sydney Street
Valley, Alabama 36854

OF COUNSEL

23